UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TANIKA PARKER, et al.,

    Plaintiffs,

v.

TENNECO INC., et al.,

    Defendants.

_____/

Case No. 23-10816

Hon. George Caram Steeh

## OPINION AND ORDER DENYING
## MOTION TO COMPEL ARBITRATION (ECF NO. 9)

Plaintiffs Tanika Parker and Andrew Farrier filed this breach of fiduciary duty action in a representative capacity on behalf of their employee retirement plans, and as a class action on behalf of themselves and person who were or are participants in or beneficiaries of the plans. The matter is before the Court on defendants' motion to compel plaintiffs to submit the dispute to arbitration. Upon a careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2). Because the Court finds that the "Group, Class, or Representative Action" Waiver in the Arbitration Procedure is invalid, and that the entire Arbitration Procedure is therefore rendered null and void, defendants' motion to compel arbitration is denied.

-1-

FACTUAL BACKGROUND

This case involves two ERISA-covered 401(k) plans maintained by defendant Tenneco, Inc. and/or its subsidiaries: the DRiV 401(k) Retirement Savings Plan ("DRiV Plan") and the Federal-Mogul Corporation 401(k) Investment Program, which was subsequently renamed the Tenneco 401(k) Investment Plan (Tenneco Plan). Since the filing of this lawsuit, the DRiV Plan was merged into the Tenneco Plan.

Plaintiff Tanika Parker participated in the DRiV Plan until it was merged into the Tenneco Plan, and she continues to participate in the Tenneco Plan. Plaintiff Andrew Farrier participated in the Tenneco Plan during the relevant limitations period, but prior to its merger with the DRiV Plan, and is no longer a participant in the Plan.

Originally, neither the DRiV Plan nor the Tenneco Plan included an arbitration provision or representative action waiver. On November 24, 2021, the Boards of the Plans' sponsors authorized the Board of Directors of Tenneco, Inc. (Tenneco Board) to also act as a Plan sponsor, including granting it "the power to delegate some or all of its authority to certain committees or individuals." (DRiV Amend. 2021-1, ECF No. 9-1, PageID.237; Tenneco Amend. 2021-1, ECF No. 9-1, PageID.329). The Tenneco Board then created a new Administrative Committee of Tenneco

Inc. (Administrative Committee) and "authorized the Administrative Committee to adopt amendments to the employee benefits plans maintained by the subsidiaries of Tenneco Inc. that are technical in nature or necessary in the ordinary course of the administration of the Plan . . . ." *Id*.

The Administrative Committee adopted Amendment 2021-1 to the DRiV Plan and the Tenneco Plan (Amendments). The Amendments included a "Mandatory and Binding Arbitration Procedure (Arbitration Procedure)." Subsection (b) of the Arbitration Procedure is a Waiver, which precludes a claimant from bringing a covered claim in a representative capacity:

> All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary relief (whether such monetary relief is described as legal damages or equitable relief) to any Employee, Participant or Designated Beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's individual Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's individual Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper

> so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Designated Beneficiary other than the Claimant, and is not binding on the Committee or Trustee with respect to any Employee, Participant or Designated Beneficiary other than the Claimant. Notwithstanding the foregoing, nothing in this provision shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary.

Subsection (b) further provides that if a court finds the "Group, Class, or Representative Action" Waiver (Class Action Waiver) to be unenforceable or invalid, then the entire Arbitration Procedure is rendered null and void:

> The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section [12.10/13.13], Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"). In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section [12.11/13.14], then the entire Arbitration Procedure (i.e., all of Section [12.10/13.13]) shall be rendered null and void in all respects.

DRiV Amend. 2021-1 ¶ 5, ECF No. 9-1, PageID.239–40; Tenneco Amend. 2021-1 ¶ 4, ECF No. 9-1, PageID.331–32.

The Amendments include a venue clause that works in conjunction with the Arbitration Procedure:

-4-

> . . . To the extent, however, any Claimant fails or refuses to comply with the Arbitration Procedure [or] wishes to challenge the legal enforceability of the Arbitration Procedure . . . , such action or challenge shall be filed exclusively in the United States District Court for the Eastern District of Michigan . . . ."

DRiV Amend. 2021-1 ¶ 6, ECF No. 9-1, PageID.243; Tenneco Amend. 2021-1 ¶ 5, ECF No. 9-1, PageID.334.

Effective July 1, 2022, the DRiV Plan was merged into the Tenneco Plan by the Administrative Committee. Then, on November 24, 2022, the Administrative Committee adopted a combined version of the Tenneco Plan that incorporated its prior amendments, including Amendment 2021-1, into one comprehensive document ("Restated Tenneco Plan"). The language regarding the Arbitration Procedure and Class Action Waiver provisions in the Restated Tenneco Plan is substantively the same as the language set forth in the Amendments.

The Plans generally delegate "exclusive authority to resolve any dispute or issue of arbitrability" to the arbitrators. However, with respect to the Class Action Waiver, the Plans provide that "[a]ny dispute or issue as to the applicability or validity of the Class Action Waiver shall be determined solely by the court." Restated Tenneco Plan, § 13.13(b).

The Plans are "defined contribution" plans, meaning that the Plans' sponsor selects a "menu" of investment options in which each participant

can invest. In the Amended Complaint, plaintiffs allege that defendants breached their fiduciary duties under ERISA by failing to employ a prudent process for selecting, monitoring, and removing investment options from the Plans' menus. As a result, the investment options offered by the Plans were more expensive than substantially similar alternative investment options and the fees charged for managed-account services, recordkeeping and administration were also excessive. The claims are asserted by plaintiffs in a representative capacity "on behalf of" the DRiV Plan and the Tenneco Plan, and as class representatives of certain participants and beneficiaries of the Plans. Amended Complaint, ECF No. 2.

      The relief sought by plaintiffs includes actual damages in the amount of any losses the Plans suffered due to a breach of fiduciary duties owed under ERISA, to be allocated among the participants' individual accounts in proportion to the accounts' losses. Plaintiffs also seek equitable relief, including the possible appointment of an independent fiduciary and removal of any Plan fiduciary deemed to have breached their fiduciary duties. ECF No. 2, PageID.113.

LAW AND ANALYSIS

Arbitration agreements are enforceable under the Federal Arbitration Act (FAA). 9 U.S.C. § 2. "Section 2 of the FAA embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts, so courts must 'rigorously enforce' arbitration agreements according to their terms." *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) (citations omitted). A party seeking to avoid arbitration bears the burden of "showing a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

"'Whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy' are gateway arbitrability questions." *Ciccio*, 2 F.4th at 583. Although such questions are generally for the court to decide, the parties may delegate arbitrability questions to the arbitrator. *Id.* To delegate the question of arbitrability to the arbitrator, "there must be 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide such issues." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020), *cert. denied sub nom. Piersing v. Domino's Pizza Franchising LLC*, 141 S. Ct. 1268 (2021).

The Arbitration Procedure at issue in this case delegates "exclusive authority to resolve any dispute or issue of arbitrability" to the arbitrators, "[e]xcept as to the applicability and enforceability of the . . . Class Action Waiver." Therefore, it is up to this Court to decide whether the Plan's Class Action Waiver is enforceable.

Defendants argue that plaintiffs cannot satisfy their heavy burden of showing that the Class Action Waiver in the Arbitration Procedure is void where Congress has never clearly expressed the intent that parties cannot agree to requiring individual arbitration of claims under ERISA 29 U.S.C. § 1132(a)(2). In response, plaintiffs focus on the inherent conflict between the limitations in the Class Action Waiver and the remedies provided by § 1132(a)(2). As discussed further below, plaintiffs argue that the Class Action Waiver is invalid and unenforceable because it interferes with statutory rights provided by ERISA. The Arbitration Procedure expressly provides if the Class Action Waiver is unenforceable, then the Arbitration Procedure is null and void in its entirety. For this reason, plaintiffs maintain that the Court must deny defendants' motion to compel arbitration.

"It is well-established that 'a party does not forgo the substantive rights afforded by [a] statute [when she agrees to arbitrate a statutory claim but] only submits to their resolution in an arbitral, rather than a judicial,

-8-

forum.'" *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 670 (6th Cir. 2003) (en banc) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); in the context of a Title VII case); *accord Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022). Thus, an arbitration agreement is not enforceable if it has the effect of altering, limiting, or precluding a party from pursuing her substantive rights or remedies under a federal statute. *Morrison*, 317 F.3d at 670; *Moriana*, 142 S. Ct. at 1919.

The Court begins by examining what substantive rights and remedies are provided by § 1132(a)(2) (also referred to as § 502(a)(2)). "ERISA imposes high standards of fiduciary duty upon administrators of an ERISA plan." *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). A civil action for breach of those fiduciary duties may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary." *Id.* § 1132(a)(2); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 251, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008) ("Section 502(a)(2) provides for suits to enforce the liability-creating provisions of § 409, concerning breaches of fiduciary duties that harm plans."); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 630 (6th Cir. 2022), *cert. denied*, 214 L. Ed. 2d 335, 143 S. Ct. 564 (2023).

The remedies provided for a breach of fiduciary duty include compensating for losses to the plan, restoring profits to the plan, and other appropriate equitable or remedial relief:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to *make good to such plan any losses to the plan* resulting from each such breach, and *to restore to such plan any profits* of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such *other equitable or remedial relief as the court may deem appropriate*, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a) (also referred to as ERISA § 409(a)) (emphasis added).

Suits under § 1132(a)(2) are "brought in a representative capacity on behalf of the plan as a whole." *Hawkins*, 32 F.4th at 630 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)). In *Russell*, the Supreme Court held a plan administrator's delay in processing a disputed claim in a defined-benefit plan did not give rise to a private right of action and that the statute only contemplated relief for "the plan itself." 473 U.S. at 144. Subsequently, in *LaRue*, the Supreme Court considered *Russell* in the context of a defined-contribution plan. The *LaRue* Court acknowledged that in defined-contribution plans, fiduciary misconduct can "diminish[ ] plan assets payable to all participants and beneficiaries, or only to persons tied

-10-

to particular individual accounts." *Id*. at 255-56. The Court "therefore [held] that although § [1132](a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id*. at 256.

The Sixth Circuit recently considered whether an arbitration agreement was binding on plan participants' breach of fiduciary duty claims under § 1132(a)(2). The Court concluded that the claims were outside the scope of the arbitration agreement where the participants sought plan-wide relief through ERISA's statutory mechanism designed for representative actions on behalf of the plan. *Hawkins*, 32 F.4th at 636. In conducting its analysis, the Court found the reasoning of the Ninth Circuit persuasive. *Id*. at 632. In *Munro v. University of Southern California*, 896 F.3d 1088 (9th Cir. 2018), the Ninth Circuit looked to qui tam claims brought by an employee on behalf of the United States under the False Claims Act. The underlying fraud claims asserted in such cases belong to the government and not to the relator. The Ninth Circuit held that the claims were not claims the employee had against the employer and therefore were not within the scope of the arbitration agreement. "The *qui tam* claims were outside the scope of the arbitration agreement even though 'the relator is entitled to

-11-

more than a nominal share of the government's recovery' and 'the FCA provides that the relator brings suit not only for the United States Government but also for the person.'" *Hawkins*, 32 F.4th at 632 (quoting *Munro*, 896 F.3d at 1093) (internal quotations omitted)).

The Sixth Circuit agreed that, "[a]lthough § 502(a)(2) claims are brought by individual plaintiffs, it is the plan that takes legal claim to the recovery, suggesting that the claim really 'belongs' to the Plan. And because § 502(a)(2) claims 'belong' to the Plan, an arbitration agreement that binds only individual participants cannot bring such claims into arbitration." *Id*. at 632–33. Regarding the remedy, the Court relied on *LaRue* (which held that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." 552 U.S. at 256) and stated that "[t]he fact that the individual Plaintiffs will indirectly benefit from a remedy accruing to the Plan as a whole does not render the claims individualized." *Id*. at 634.

Congressional intent supports the Sixth Circuit's view that § 1132(a)(2) claims and remedies belong to the plan. Section 409's "draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Russell*, 473 U.S. at 142; V*arity*

*Corp. v. Howe*, 516 U.S. 489, 509 (1996) (analyzing *Russell* decision, specifically § 502(a)(2) which addresses breach of fiduciary duty under § 409(a)).

Other Circuits considering the issue agree that while an arbitration agreement can alter procedures, including eliminating class-wide arbitration, they cannot eliminate forms of relief that are provided for by statute. *See*, Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors, 59 F.4th 1090, 1111 (10th Cir. 2023) ("[A]n arbitration agreement can alter or eliminate *procedures* (including eliminating class-wide arbitration) but cannot alter or eliminate *forms of relief* that are provided for by statute."); Smith v. Bd. of Directors of Triad Mfg., Inc., 13 F.4th 613, 622 (7th Cir. 2021) ("To reiterate, the problem with the plan's arbitration provision is its prohibition on certain plan-wide remedies, not plan-wide representation. It is not that the plan funnels its participants away from class actions.").

Defendants maintain that the statute allows for § 1132(a)(2) claims that are brought in the context of a defined contribution plan to be asserted and resolved on an individual basis. In support of this proposition, defendants rely on cases that are based on a misreading of the holding in *LaRue*. In *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019), the Ninth Circuit ordered plaintiffs to individually arbitrate their

-13-

ERISA breach of fiduciary duty claims. The Court read *LaRue* as "stand[ing] for the proposition that a defined contribution plan participant can bring a § 502(a)(2) claim for the plan losses in her own individual account." *Id.* at 514 (citations omitted).

As discussed above, the Sixth Circuit interprets *LaRue* to mean that § 1132(a)(2) claims and remedies belong to the plan and "does not provide a remedy for individual injuries distinct from plan injuries." *Hawkins*, 32 F.4th at 634 (citing *LaRue*, 552 U.S. at 256). No other Circuit has followed *Dorman* and most courts agree its ruling is not persuasive. *See, e.g.*, *Burnett v. Prudent Fiduciary Servs. LLC*, No. 22-cv-270, 2023 WL 387586, at *7 n.7 (rejecting *Dorman* as unpersuasive); *Smith v. Greatbanc Tr. Co.*, No. 20-cv-2350, 2020 WL 4926560, at *4 (N.D. Ill. Aug. 21, 2020) (rejecting *Dorman* due to it misunderstanding *LaRue*), aff'd, 13 F.4th 613 (7th Cir. 2021).

While plaintiffs purport to seek relief on behalf of themselves, the Amended Complaint clearly seeks relief for the Plan as a whole and expressly states plaintiffs are suing on behalf of the Plan. Plaintiffs are also proceeding as a putative class, but that is a function of the representative nature of an § 1132(a)(2) action. In alleging that defendants breached their fiduciary duties by offering higher-cost investment options and charging

-14-

excessive recordkeeping fees, the harm (and the recovery) is to the Plan, rather than to plaintiffs specifically. The Amended Complaint also seeks an order to enjoin defendants from further violations of ERISA and to provide other equitable relief that benefits the Plan as a whole.

By restricting a participant's remedy to individual actions to recover losses to their individual accounts, the Class Action Waiver prohibits the plan-wide remedies expressly provided by § 1132(a)(2). The Class Action Waiver does this by (1) prohibiting participants from bringing suit in a representative capacity on behalf of the plan, and (2) limiting relief to losses attributable to individual participant accounts, as opposed to plan-wide remedies. These rights and remedies provided to plans under ERISA may not be taken away by agreement. *See e.g., Smith*, 13 F.4th at 621 ("what the statute permits, the plan precludes.")

The Class Action Waiver limits a participant's substantive right under ERISA by prohibiting plan participants from bringing suit under 1132(a)(2) and is therefore unenforceable. According to the Arbitration Provision, "[i]n the event that the . . . "Class Action Waiver" [is] found unenforceable or invalid by the court . . ., then the entire Arbitration Procedure . . . shall be rendered null and void in all respects. The Court concludes that the Arbitration Procedure does not apply to the pending action.

-15-

CONCLUSION

For the reasons set forth above, the Court denies defendant's motion to compel arbitration. As such, the Court need not address plaintiffs' argument that the Administrative Committee's purported adoption of the Arbitration Procedure exceeded its limited delegated authority to amend the Plans.

IT IS HEREBY ORDERED that defendants' motion to compel arbitration (ECF No. 9) is DENIED.

IT IS HEREBY FURTHER ORDERED that defendants' Answer is due by September 18, 2023.

So Ordered.

Dated:  August 21, 2023

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 21, 2023, by electronic and/or ordinary mail.

s/Mike Lang
Deputy Clerk