# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Tanika Parker, *et al.*,

      Plaintiffs,   Case No. 23-10816

v.           Judith E. Levy
            United States District Judge

Tenneco Inc., *et al.*,

           Mag. Judge Kimberly G. Altman
      Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' OMNIBUS MOTION [74]

Before the Court is Defendants'[1] omnibus motion to dismiss

Plaintiffs' second amended complaint ("SAC") and to deny Plaintiffs'

---

[1] The Defendants identified in the second amended complaint are as follows: Tenneco Inc., DRiV Automotive Inc., Tenneco Automotive Operating Company Inc., Federal-Mogul Powertrain LLC, Federal-Mogul LLC, Federal-Mogul Corporation, the Board of Directors of Tenneco Inc., the Board of Directors of DRiV Automotive Inc., the Board of Directors of Tenneco Automotive Operating Company Inc., the Tenneco Benefits Committee, the Tenneco Compensation Committee, the Tenneco Investment Committee, the Tenneco Benefits & Pension Investment Committee, the Tenneco Benefit Appeals Committee, the Tenneco Benefits Oversight Committee, the Tenneco Administrative Committee, the Tenneco Investment Committee, the Federal-Mogul LLC Benefits Administrative Committee, the Federal-Mogul LLC Compensation Committee, the Federal-Mogul Powertrain LLC Benefits Administration Committee, Brian J. Kesseler, Thomas J. Sabatino, Jr., Roy V. Armes, Thomas C. Freyman, Denise Gray, Michelle A. Kumbier, Dennis J. Letham,

motion for leave to file a third amended complaint. (ECF No. 74.) The Court issued an order denying Plaintiffs' motion for leave to file a third amended complaint. (ECF No. 92.) This order addresses the remaining portions of Defendants' omnibus motion.

This motion is fully briefed, and several notices of supplemental authority have been filed. (ECF Nos. 78, 82, 83, 84, 87, 90, 91, 94, 95.) On February 24, 2026, the Court held a hearing and heard oral argument on the motion.

For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.     Background

This case is a putative class action concerning two retirement plans (the "Plans"): the DRiV Plan and the Tenneco Plan, which merged into a single Tenneco Plan in July 2022. Named Plaintiffs Tanika Parker, a DRiV employee, and Andrew Farrier, a Tenneco employee, participated

---

James S. Metcalf, Aleksandra A. Misiolek, Charles K. Stevens, III, John S. Stroup, Jane L. Warner, Gregg M. Sherrill, Sunghwan Cho, Roger B. Porter, David B. Price, Kaled Awada, Mattie Masanovich, Paul D. Novas, Peter Acker, Zhenfeng (Jennifer) Lou, Evan Stall, Alison Mathieu, Jan Maiden, Jerome Rouquet, Ron Hundzinski, and John and Jane Does 1-30. (ECF No. 70.)

in the Plans during the class period, which is May 2016 through the date of judgment. (ECF No. 70, PageID.1678.)

The Plans are defined contribution plans, where individual accounts are created for each participant and the benefits accrued are based on employee and employer contributions, as well as the gains and losses based on investments. (*Id.* at PageID.1703–1704.) Prior to their merger, the Plans held more than $500 million in assets, which "plac[ed] them within the top 0.2% of all 401(k) plans based on size." (*Id.* at PageID.1680.)

Plaintiffs claim that the fiduciaries for the Plans, i.e., Defendants, breached their fiduciary duties and the Employee Retirement Income Security Act ("ERISA"). The SAC names 46 Defendants. Defendants are the company sponsors of the Plans,[2] boards of directors and committees

---

[2] Tenneco Inc., DRiV Automotive, Tenneco Automotive Operating Company, Federal-Mogul Corporation, Federal-Mogul LLC, and Federal-Mogul Powertrain LLC.

that administered the Plans or oversaw those who administered the Plans,[3] and individuals who are members of those boards or committees.[4]

Plaintiffs allege that the fiduciaries of the DRiV Plan breached their fiduciary duties or otherwise violated the law in the following ways:

- Failing to replace target date mutual funds with substantively identical, but much less expensive, collective trust versions, causing participants to be charged excessive fees;

- Choosing a recordkeeping service provider that charged excessive fees;

- Using forfeited funds to reduce company contributions instead of using those funds to reduce fees paid by participants;

---

[3] Board of Directors of Tenneco Automotive Operating Company Inc., Tenneco Compensation Committee, Tenneco Benefits Committee, Tenneco Benefits & Pension Investment Committee, Tenneco Benefit Appeals Committee, Tenneco Benefits Oversight Committee, Tenneco Administrative Committee, Tenneco Investment Committee, Federal-Mogul LLC Benefits Administrative Committee, Federal-Mogul LLC Compensation Committee, Federal-Mogul Powertrain LLC Benefits Administration Committee.

[4] Brian J. Kesseler, Thomas J. Sabatino, Jr., Roy V. Armes, Thomas C. Freyman, Denise Gray, Michelle A. Kumbier, Dennis J. Letham, James S. Metcalf, Aleksandra A. Misiolek, Charles K. Stevens, III, John S. Stroup, Jane L. Warner, Gregg M. Sherrill, Sunghwan Cho, Roger B. Porter, David B. Price, Kaled Awada, Mattie Masanovich, Paul D. Novas, Peter Acker, Zhenfeng (Jennifer) Lou, Evan Stall, Alison Mathieu, Jan Maiden, Jerome Rouquet, Ron Hundzinski, and John and Jane Doe Defendants 1-30.

- Failing to replace investment options with less expensive, substantially similar investment options, causing participants to pay unnecessary investment management fees;

- Failing to offer the lowest-cost share classes of funds, which the Plan qualified for, even though the share classes of funds were identical and cost less;

- Choosing a managed account service provider that charged excessive fees.

Plaintiffs allege that the fiduciaries of the Tenneco Plan breached their fiduciary duties or otherwise violated the law in the following ways:

- Failing to replace target date mutual funds with substantively identical, but much less expensive, collective trust versions, causing participants to be charged excessive fees;

- Choosing a recordkeeping service provider that charged excessive fees;

- Using forfeited funds to reduce company contributions instead of using those funds to reduce fees paid by participants;

- Failing to replace certain index funds with lower cost, substantially similar alternatives.

## II. Defendants' motion to dismiss the second amended complaint

### A. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555.

### B. Fiduciary duty claims related to forfeitures

Plaintiffs claim that Defendants for both Plans violated their fiduciary duties of loyalty and prudence when Defendants used forfeited

Plan assets, otherwise known as forfeitures, to offset future employer contributions. (ECF No. 70, PageID.1797–1798; *see also id.* at PageID.1775–1784.)

> As set forth in the Court's April 22, 2025 order:
>
> Plan participants forfeit their plan contributions when they end their employment before they are fully vested. According to the proposed SAC, Defendants exercised their discretion as fiduciaries to use forfeited contributions to reduce company contributions rather than to reduce administrative expenses borne by plan participants, which violated Defendants' fiduciary duties. Plaintiffs include specific dollar amounts that they argue could have been used to benefit plan participants' interests rather than [benefiting] company interests. The proposed SAC also asserts that the plan fiduciaries were company employees, which created a conflict of interest with respect to how to dispose of forfeited contributions.

(ECF No. 65, PageID.1376 (internal citations omitted).) Defendants argue that Plaintiffs' allegations are insufficient because they have not shown that: (1) the challenged actions were taken in Defendants' fiduciary capacity, (2) Defendants breached their ERISA fiduciary duty, and (3) the Plans suffered harm as a result of any conduct. (ECF No. 74, PageID.2133–2134.)

The Court concludes that Plaintiffs' allegations are insufficient to show a breach of Defendants' fiduciary duties.[5]

An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). "A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) the defendant is a plan fiduciary; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in harm to the plaintiff." *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 464 (6th Cir. 2022).

Numerous district courts confronted with similar allegations—that a defined contribution plan was permitted to use forfeitures to either pay fees or reduce employer contributions and chose to use them to reduce

---

[5] With regard to Defendants' argument that the challenged actions were not taken in Defendants' fiduciary capacity, the Court disagrees. An ERISA fiduciary duty "consist[s] of such actions as the administration of the plan's assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). This includes "exercis[ing] the powers conferred[ ] by the trust document." *Best v. Cyrus*, 310 F.3d 932, 935 (6th Cir. 2002) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996)). "[T]he decision to allocate forfeited amounts constitutes a fiduciary, not settlor, function" because it is a decision permitted by the trust documents. *Barragan v. Honeywell Int'l Inc.*, No. 24CV4529 (EP) (JRA), 2024 WL 5165330, at *3 (D.N.J. Dec. 19, 2024); *see also Dimou v. Thermo Fisher Sci. Inc.*, No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *8 (S.D. Cal. Sept. 19, 2024); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024).

employer contributions—have held that the plausibility of the plaintiffs' allegations depend on "the context and circumstances of the fiduciary's actions." *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024) ("*Hutchins I*") (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425–27 (2014)). For example, the *Hutchins I* plaintiff's allegations amounted to a claim that, "if given the option between using forfeited funds to pay administrative costs or to reduce employer contributions, a fiduciary is *always* required to choose to pay administrative costs." *Id.* at 862–63. The *Hutchins I* court found that this theory was "implausible" because the plaintiff's "theory would require any fiduciary to use forfeited amounts to pay administrative costs regardless of any such context or circumstances" and dismissed the claim. *Id.*

Similarly, the court in *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873 (C.D. Ill. 2025) determined that the plaintiff's claim was sufficient because, while there are instances where participants would benefit from forfeitures being used to pay for employer contributions (such as when the employer is financially unable to meet those obligations), this plaintiff had alleged that those circumstances were not present and the employers were able to meet their contributory

obligations. *Id.* at 887–88; *see also McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087, at \*2 (N.D. Cal. Mar. 3, 2025).

Here, Plaintiffs' allegations are insufficient because they have not provided any context or circumstances related to Defendants' financial status or actions. Unlike *McManus* and *Buescher*, the SAC fails to allege that the circumstances did not warrant the allocation of forfeitures to company contributions, such as alleging that the Companies (*i.e.*, the sponsors of the Plans) were able to satisfy the required company contributions to the Plans. (*See* ECF No. 70, PageID.1777–1779.) In fact, Plaintiffs agree that Defendants, in some circumstances such as "serious financial difficulty," should "use forfeitures to make up for already-promised contributions." (ECF No. 78, PageID.2776.)[6]

---

[6] The SAC also appears to allege that the allocation of forfeitures to company contributions "caused the company and its related entities to violate the Plan's terms" because it allowed the Companies to forgo their "mandatory" requirement to make matching contributions. (ECF No. 70, PageID.1779 ("Defendants' actions, by applying forfeited amounts already in the DRiV Plan trust to reduce the mandatory new Employer matching and retirement contributions to the DRiV Plan trust, caused the company and its related entities to violate the Plan's terms and caused the Plaintiffs to receive less in benefits than they were contractually owed under the DRiV Plan.").)

By acknowledging that forfeitures, in some circumstances, should be used to make up for company contributions, Plaintiffs appear to abandon their argument that the Companies themselves must always be the source of company contributions. That forfeitures can be used to pay company contributions in certain situations, and that

Plaintiffs nonetheless argue that Defendants' use of forfeitures violated their fiduciary duties because they "applied forfeitures in the same, self-serving way year after year, without a prudent or loyal decision-making process." (*Id.*) In the response brief and at oral argument, Plaintiffs represented that a proper fiduciary, when exercising its discretion with regard to the use of forfeitures, should look at the company's status and make a year-by-year determination on what the most prudent application of forfeitures would be. Plaintiffs claimed that Defendants failed to undergo a "prudent process" and instead mechanically applied forfeitures to company contributions every year.

However, this characterization of Plaintiffs' claim does not match their claim as pleaded in the SAC. At no point do Plaintiffs allege that Defendants lacked a prudent process on how to exercise their discretion regarding forfeitures. The SAC only claims that Defendants regularly applied forfeitures to company contributions, and that these decisions *per se* violated Defendants' fiduciary duties. (*See* ECF No. 70, PageID.1778–1779; *id.* at PageID.1783–1784.) But "Plaintiffs cannot . . . amend their

---

the Companies must always be the source of company contributions, cannot both be true.

complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).

As such, Plaintiffs' fiduciary duty claims related to the use of forfeitures are dismissed.

### C. Prohibited transaction claims related to forfeitures

Plaintiffs allege that Defendants engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a)(1)(A) and § 1106(b)(1) when they used forfeitures to pay for company contributions. (*See* ECF No. 70, PageID.1798.)

29 U.S.C. § 1106(a)(1)(A), which covers "transactions between [a] plan and [a] party in interest," states, "[e]xcept as provided in section 1108 of this title[ ] [a] fiduciary with respect to the plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect[ ] sale or exchange, or leasing, of any property between the plan and a party in interest." 29 U.S.C. § 1106(b)(1), which covers "transactions between plan and fiduciary," states, "[a] fiduciary with respect to a plan shall not[ ] deal with the assets of the plan in his own interest or for his own account."

It is undisputed that both claims require a "transaction" or "transactions," whether it is between the Plans and a fiduciary, or a party in interest (such as a fiduciary or an employer).[7] As an initial matter, Plaintiffs have not stated a claim under 29 U.S.C. § 1106(a)(1)(A) due to the plain language of that statute. Section 1106(a)(1)(A) requires transactions that "constitute a direct or indirect[ ] sale or exchange, or leasing, of any property" between the Plans and the employers (*i.e.*, the Companies). The use of forfeitures for company contributions is not a sale, exchange, or lease of property. The forfeitures do not leave the Plans, and the Plans do not receive anything in return for the use of forfeitures for company contributions.

Regarding § 1106(b)(1), several district courts have held that similar allegations are insufficient to state a prohibited transaction claim under that provision.[8] The Court is ultimately not convinced that the

---

[7] The definition of "party in interest" includes "any fiduciary" of the employee benefit plan and "an employer." 29 U.S.C. § 1002(14)(A), (C).

[8] *See Buescher*, 791 F. Supp. 3d at 897; *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 928 (N.D. Cal. 2025) ("*Hutchins II*"); *Barragan*, 2024 WL 5165330, at *7; *Middleton v. Amentum Parent Holdings, LLC*, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at *16 (D. Kan. Aug. 5, 2025); *Dimou*, 2024 WL 4508450, at *11; *Brown v. Peco Foods, Inc.*, No. 3:25-CV-491-TSL-RPM, 2025 WL 3210857, at *9 (S.D. Miss. Nov. 14, 2025).

movement of forfeited funds within a Plan consists of a "transaction" such that Defendants can be held liable under this Section. *See Buescher*, 791 F. Supp. 3d at 897 ("[T]ransactions tend to involve multiple parties and some sort of exchange between them."); *see also Hutchins I*, 737 F. Supp. 3d at 868. The Court also notes that § 1006(b)(1) prohibits a fiduciary from "dealing" with the assets of the plan "in his own interest or for his own account," which appears to require "buying and selling" or "the purchase and exchange of something for profit." *Buescher*, 791 F. Supp. 3d at 897 (quoting *Deal*, Black's Law Dictionary (12th ed. 2024)). Here, the use of forfeitures as company contributions does not involve an exchange or a purchase between the Plans and any fiduciary.

Finally, as set forth earlier, there are circumstances when using forfeitures to pay company contributions is desirable, such as when a company faces serious financial difficulty, and permitting fiduciaries to use forfeitures in those circumstances would be beneficial for everyone. A finding that using forfeitures for company contributions constitutes a prohibited transaction, no matter the circumstances, would not take into consideration the realities of plan administration. *Id.* at 897–98.

For all of these reasons, Plaintiffs' prohibited transaction claims against Defendants related to forfeitures are dismissed.

### D.     Anti-inurement claims related to forfeitures

Plaintiffs also allege that the allocation of forfeitures to company contributions violates ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1). Section 1103(c)(1) states that, aside from certain exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

Several district courts have held that similar anti-inurement claims are not viable because the plaintiff never alleged that the forfeited assets left the plan or that the assets were used for a purpose other than participant benefits.[9] These courts have interpreted the Supreme Court's

---

[9] *See Madrigal v. Kaiser Found. Health Plan, Inc.*, No. 2:24-CV-05191-MRA-JC, 2025 WL 1299002, at *6 (C.D. Cal. May 2, 2025) (collecting cases); *Hutchins II*, 2025 WL 404594; *Barragan*, 2024 WL 5165330, at *6; *Wright v. JPMorgan Chase & Co*, No. 2:25-CV-00525-JLS-JC, 2025 WL 1683642, at *6 (C.D. Cal. June 13, 2025); *McManus*, 2024 WL 4944363, at *7; *Dimou*, 2024 WL 4508450, at *10; *Middleton v. Amentum Parent Holdings, LLC*, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at *17 (D. Kan. Aug. 5, 2025); *Sievert v. Knight-Swift Transportation Holdings, Inc.*, 780 F. Supp. 3d 870, 880 (D. Ariz. 2025).

decisions in *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) and *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004), as stating that an anti-inurement claim fails if the plan's assets were used to pay benefits to participants, even if the employer benefits from those actions. *Hutchins I*, 737 F. Supp. 3d at 864; *Barragan*, 2024 WL 5165330, at *5; *see also Hughes Aircraft Co.*, 525 U.S. at 442 ("As the language makes clear, the section focuses exclusively on whether fund assets were used to pay pension benefits to plan participants . . . ."); *Raymond B. Yates*, 541 U.S. at 22 ("The [anti-inurement] provision demands only that plan assets be held for supplying benefits to plan participants.").

Similarly, the Sixth Circuit in *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984) held that the anti-inurement provision "cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective." *Id.* at 551. Defendants urge the Court to find that this reasoning also applies here—that Defendants incidentally benefited from the allocation of forfeitures

16

to company contributions does not mean that ERISA was violated. (ECF No. 74, PageID.2147.)

The Court concludes that Plaintiffs' anti-inurement claim fails. Although the forfeitures were not used in the manner Plaintiffs preferred, it is undisputed that the forfeitures, when used "as a substitute for future employer contributions to the Plan[s]" (ECF No. 70, PageID.1798, 1800), remain in the Plans and are still being used to "provid[e] benefits to participants in the plan." 29 U.S.C. § 1103(c)(1). While it is true that *Hughes* and *Holliday* involve defined-benefit plans, not defined contribution plans (as applies here), Plaintiffs do not sufficiently explain why a defined contribution plan requires employers to use of forfeitures in certain ways and not in others.

### E. Fiduciary duty of prudence claims related to excessive fees[10]

Plaintiffs claim that Defendant violated their fiduciary duty of prudence in a variety of ways related to excessive fees.

"An ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like

---

[10] At oral argument, Plaintiffs confirmed that they do not pursue claims for breach of duty of loyalty related to their excessive fees claims.

capacity and familiar with such matters' would use." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015) (quoting § 1104(a)(1)). "[U]nder trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones. A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* at 530.

The Court's consideration of Plaintiffs' allegations requires "careful, context-sensitive scrutiny." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164 (6th Cir. 2022) (quoting *Dudenhoeffer*, 573 U.S. at 425). "Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Dudenhoeffer*, 573 U.S. at 425.

### i.    *Recordkeeping fees*

Plaintiffs allege that Plan participants paid excessive recordkeeping fees due to Defendants' failure to monitor those fees. (ECF No. 74, PageID.2150; ECF No. 70, PageID.1749, 1771.)

As set forth by the Sixth Circuit, plaintiffs challenging excessive fees on these grounds must plead "that the fees were excessive relative to the services rendered or establish other factors relevant to determining

18

whether a fee is excessive under the circumstances." *England v. DENSO Int'l Am. Inc.*, 136 F.4th 632, 636–37 (6th Cir. 2025) (cleaned up). Usually, this involves pleading that the challenged plan's fees were greater than the comparator's, even though the challenged plan's fees and a comparator's fees covered equivalent services. *Id.*; *see also Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022) (affirming grant of motion to dismiss because the "employees never alleged that these fees were high in relation to the services that the plan provided"); *Smith*, 37 F.4th at 1169 (same, because the plaintiff "has not pleaded that the services she received are equivalent to those provided by [comparator plans]" and did not provide other facts relevant to determining "whether a fee is excessive under the circumstances" (cleaned up)).

Plaintiffs provide several comparators in support of their claims. (*See* ECF No. 70, PageID.1753–1755, 1771–1773.) However, Plaintiffs' allegations are insufficient. Although the SAC alleges that the comparators are a similar size, it does not provide other necessary information to demonstrate that they are apt comparisons, such as the quality of the services or the services provided.

19

Plaintiffs also compare the recordkeeping fees of the Plans before and after the July 2022 merger. Between 2016 and July 2022, the date of the merger, DRiV Plan participants paid between $54.00 and $100.92 annually per participant in recordkeeping fees. (ECF No. 70, PageID.1754.) Similarly, between 2016 and 2021, Tenneco Plan participants paid between $51.00 and $103.67 annually per participant in recordkeeping fees. (*Id.* at PageID.1771–1772.) After the two Plans merged in July 2022, the Plan participants paid only $39.50 annually per participant. (*Id.* at PageID.1757.) Plaintiffs argue that such a low per-participant recordkeeping fee could have been achieved earlier had Defendants acted prudently: "Defendants could have used the economies of scale of both Plans to negotiate on behalf of all participants in both Plans to consolidate to a single recordkeeper, even before the formal merger of the Plans, but they failed to use the combined size to negotiate lower fees from an existing provider." (*Id.*)

Plaintiffs' attempt to use the post-merger recordkeeping services as the comparator ultimately fails. The SAC alleges that these recordkeeping services remained "at a similar service quality." (*Id.* at PageID.1758.) However, the SAC does not provide allegations regarding

whether the services changed before and after the merger.[11] Again, a plaintiff must "identify[ ] the alleged problematic financial metric and then compar[e] it to a 'meaningful benchmark.'" *England*, 136 F.4th at 636 (quoting *Forman*, 40 F.4th at 451). For excessive recordkeeping claims, "a plaintiff must 'allege that the fees were excessive relative to the services rendered' or establish 'other factors relevant to determining whether a fee is excessive under the circumstances.'" *Id.* at 636–37 (*Smith*, 37 F.4th at 1169). Importantly, the SAC does not include allegations that the services provided to the Plans were the same before and after the merger. The SAC suggests that the services were

---

[11] In Plaintiffs' response, Plaintiffs state that "there are no facts to suggest that [the merger] resulted in any change in the nature or quality of the recordkeeping services the Plan received." (ECF No. 78, PageID.2788–2789; *see also id.* at PageID.2790 ("[I]t took years before Defendants negotiated their recordkeeping fees down for plausibly the same services.").) Based on the records provided in Plaintiffs' response, the services provided to the DRiV Plan were the same before and after the merger. (*See* ECF No. 78, PageID.2791 (citing ECF Nos. 78-2, 78-3).)

However, the services provided to the Tenneco Plan changed significantly after the merger (*see* ECF No. 78, PageID.2792), contradicting Plaintiffs' argument that the Tenneco Plan received "plausibly the same services" before and after the merger. Plaintiffs attempt to explain this discrepancy by stating that the Tenneco Plan "incurred massive fees for many coded services that the Tenneco fiduciaries ultimately axed as useless in favor of the DRiV Plan's model." (*Id.* at PageID.2792.) Regardless, Plaintiffs' arguments involve allegations outside the SAC, and Plaintiffs may not amend their complaint through a response brief. *See Jocham v. Tuscola Co.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003).

"comparable," (ECF No. 70, PageID.1758), but it does not provide sufficient allegations demonstrating the plausibility of those claims.

As such, Plaintiffs' excessive recordkeeping fees claims are dismissed.

### ii.    T. Rowe Price Mutual Funds

Both Plans offered a series of T. Rowe Price target date mutual funds ("TDFs") to plan participants. (ECF No. 70, PageID.1713, 1759.) Plaintiffs claim that Defendants should have replaced these TDFs with T. Rowe Price collective trust ("CIT") options, which are cheaper and "substantially identical" to the TDFs "in all material respects, including the same investment strategy, the same investment objective, and the same risk profiles." (*Id.* at PageID.1716.)

Defendants argue that the differences between TDFs and CITs render them incapable of serving as comparators as a matter of law. (ECF No. 74, PageID.2156–2157.) However, the Ninth Circuit, in an unpublished opinion, found that "[w]hether the different regulatory regimes governing mutual funds and collective investment trusts justified defendants' delay in making the switch earlier is itself a factual issue that cannot be resolved at the pleading stage." *Davis v.*

22

*Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022). Similarly, the Tenth Circuit in *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136 (10th Cir. 2023), "reject[ed] the notion that CITs could *never* be considered comparable to mutual funds." *Id.* at 1153.[12]

Here, Plaintiffs allege that the TDF and CIT versions of the funds have "the same portfolio management team, glidepath, subasset-class exposure, tactical allocation overlay, and underlying investments," (ECF No. 70, PageID.1716), making them substantially similar and proper comparators. As such, the Court finds that Plaintiffs' allegations are sufficient at the motion to dismiss stage.

### iii.   DRiV Plan's Actively Managed Funds

Plaintiffs claim that the DRiV fiduciaries violated their fiduciary duties when they kept expensive, actively managed funds. "[A]ctively managed funds," as opposed to passively managed funds, "are handled by individuals who are actively picking securities and determining when to sell, leading to more frequent purchases and sales with the ultimate goal of outperforming the market." (ECF No. 70, PageID.1735.) Passively

---

[12] The *Matney* court ultimately held that the plaintiff's allegations were insufficient because they had not sufficiently established that the CITs and TDFs were similar.

23

managed funds, such as index funds, do not involve that same kind of activity and instead "track the performance of its specified market index benchmark," like the S&P 500 index. (*Id.* at PageID.1734–1735.) Even though actively managed funds are more expensive and involve more activity, Plaintiffs allege that "actively managed funds do not outperform passively managed index funds in the long term." (*Id.* at PageID.1736.)

Prior to December 2019, both Plans had several "actively managed" options available to participants. For the DRiV Plan, it had "14 to 16 single-asset class options during the Class Period" and "approximately three were passively managed index funds whereas the majority were actively managed funds." (*Id.* at PageID.1735.) In 2019, the Tenneco Plan removed several actively managed options. (*Id.* at PageID.1736.) However, the DRiV Plan kept its actively managed investments until July 1, 2022. (*Id.*) Plaintiffs claim that the DRiV Plan's failure to remove its actively managed investment options between 2019 to 2022 violated Defendants' fiduciary duty because they needlessly kept expensive plans that were not better than the passively managed index funds.

The Sixth Circuit has held that offering actively managed funds to employees, "as opposed to offering only passively managed funds," is not

24

a breach of the fiduciary duty of prudence. *Smith*, 37 F.4th at 1165. As such, Defendants' decision to have actively managed funds as options in the DRiV Plan is not, in and of itself, a breach of its fiduciary duty.

Plaintiffs argue that the DRiV fiduciaries violated their duties because the DRiV fiduciaries did not remove actively managed funds from its lineup when the Tenneco fiduciaries did in 2019. (ECF No. 78, PageID.2797.) Plaintiffs believe that the DRiV Plan's "fail[ure] to take the same action" gives "rise to an inference of insufficient process" (*id.* (quoting *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 216 (6th Cir. 2024))), because the Tenneco Plan's actions demonstrate that "their actively managed lineup of investments 'became imprudent over time' or was 'otherwise clearly unsuitable for the goals of the fund.'" (*Id.* (quoting *Smith*, 37 F.4th at 1166).)

These claims are insufficient. According to the SAC, the Tenneco Plan (prior to December 6, 2019) and DRiV Plan had several actively managed fund options. (ECF No. 70, PageID.1736.) The two Plans had only one actively managed fund in common: the "American Funds EuroPacific Growth Fund." (*Id.*) With regard to actively managed funds that the two Plans did not have in common, Plaintiffs do not explain, nor

25

can the Court discern, how the Tenneco Plan's removal of those funds has any bearing on the DRiV Plan. Additionally, Plaintiff has not plausibly alleged that the shared actively managed fund—the American Funds EuroPacific Growth Fund—"became imprudent over time" or "was otherwise clearly unsuitable for the goals of the fund." *Smith*, 37 F.4th at 1166. The fact that one Plan kept a fund and the other did not does not, on its own, plausibly demonstrate that keeping the fund was violation of Defendants' fiduciary duties. *See, e.g.*, *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (stating that a fiduciary may have both actively and passively managed funds because "[t]hey have different aims, different risks, and different potential rewards that cater to different investors").

As such, Plaintiffs' claim related to actively managed funds is dismissed.

### iv.   DRiV Plan's Managed Account Services

Plaintiffs' fiduciary duty claim related to managed account services is also insufficiently pled. "Managed-account services are investment services under which a participant pays a fee to have a managed-account provider invest his or her account in a portfolio of preselected investment

26

options." (ECF No. 70, PageID.1740.) Although managed account services are purportedly customized, Plaintiffs allege that "[i]n practice, there may be little customization provided to the participant, which results in no material value to most, if not all, participants relative to the fees paid." (*Id.* at PageID.1741.)

Plaintiffs believe that Defendants did not monitor the fees for managed account services and failed to make appropriate changes or negotiate the fees down to match the general market. (*Id.* at PageID.1742–1743.) Instead, DRiV Plan participants allegedly paid excessive fees to Edelman Financial Engines between 2016 and 2017, and Fidelity between 2018 and 2022. (*Id.* at PageID.1745.) Plaintiffs argue that "similar services were available for significantly lower fees from other providers," and provides information on fees of other providers, such as Morningstar and Vanguard Personal Advisor. (*Id.* at PageID.1746.)

Plaintiffs do not demonstrate that these other providers are proper comparators. Although Plaintiffs state that the services are similar, they provide no information supporting that allegation. Additionally, the

27

information provided on the other providers' fees is not tied to any particular date or year.

Thus, Plaintiffs' managed account services claim is dismissed.

> v.   *DRiV Plan's Single Class Investments and Vanguard Index Funds*

Plaintiffs allege that the DRiV fiduciaries improperly kept several single class investment options that were more expensive than substantially similar alternate investment options. (ECF No. 70, PageID.1728–1729.) Similarly, Plaintiffs claim that three Vanguard index fund options in the DRiV Plan should have been replaced with lower cost options offered by State Street. (ECF No. 74, PageID.2163; ECF No. 70, PageID.1733.)

These allegations are sufficient at this stage of the case. Plaintiffs have identified "meaningful benchmark[s]," *Smith*, 37 F.4th at 1167, for the single class investment options and Vanguard index options available to DRiV Plan participants. As set forth in the SAC, Plaintiffs' quantitative analysis demonstrates that the identified alternatives were very similar to the DRiV Plan's Single Class Investments and Vanguard Index Fund options. (*Id.* at PageID.1730 (showing that the DRiV Plan investments and Plaintiffs' alternatives have similar "holdings, risk

28

profiles, and investment objections"); *see also id.* at PageID.1734 (alleging the same for the index funds).) Additionally, the identified alternatives were significantly cheaper than the options offered by the DRiV Plan. (*Id.* at PageID.1728–1729, 1733.) Finally, the DRiV Plan's options performed similarly to the identified alternatives. (*Id.* at PageID.1729, 1734.)

Taking these allegations as true, Plaintiffs' showing is sufficient to "move the claim from possible and conceivable to plausible and cognizable." *Smith*, 37 F.4th at 1167; *see also Middleton v. Amentum Parent Holdings, LLC*, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at *7 (D. Kan. Aug. 5, 2025) (finding similar factual allegations sufficient at the motion to dismiss stage); *Anderson v. Coca-Cola Bottlers' Ass'n*, No. 21-2054-JWL, 2022 WL 951218, at *8 (D. Kan. Mar. 30, 2022) (same).

Defendants' motion to dismiss Plaintiffs' claims related to the DRiV Plan's single class investments and index funds is denied.

### vi. *Tenneco Plan's Index Fund Investments*

Defendants argue that Named Plaintiff Farrier does not allege that he invested in challenged index fund investment options in the Tenneco Plan and, "as such, he lacks the requisite causal connection required to

state a viable claim under Rule 12(b)(6) and the injury-in-fact required to establish Article III standing." (ECF No. 74, PageID.2162 n.20.)

"Threshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). "A potential class representative must demonstrate individual standing vis-[a]-vis the defendant." *Id.* To establish standing, a plaintiff must demonstrate an injury in fact, causation, and redressability. *Babcock v. Michigan*, 812 F.3d 531, 539 (6th Cir. 2016). An injury in fact must be a harm that is concrete and particularized, and "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)). To qualify as particularized, the injury "must affect the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

Here, the SAC alleges that, "[d]uring the Class Period [Farrier] invested in imprudent options offered by the Tenneco Plan that are the subject of this lawsuit, including at least the T. Rowe Price Retirement 2055 Target Date mutual fund, and he paid the recordkeeping costs and administrative costs associated with the Tenneco Plan." (ECF No. 70,

PageID.1682.) There are no allegations that Farrier was injured by the Tenneco Plan's failure to replace "index funds from one investment company (Vanguard) with far less expensive funds from another investment company (State Street)." (*Id.* at PageID.1768.) Farrier has not alleged that he suffered an injury from this conduct in a "personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Farrier's claim regarding the Tenneco Plan's index fund investments is dismissed for lack of standing.

### vii.    DRiV Plan's Offered Share Classes

Plaintiffs claim that Defendants failed to take advantage of lower-cost share classes of the investment options offered by the DRiV Plan. (ECF No. 70, PageID.1737.)

Because the DRiV Plan had a large amount of assets, it qualified for lower-cost share classes in mutual funds. (ECF No. 70, PageID.1737–1738.) Despite the ability to take advantage of those lower-cost share classes, the DRiV Fiduciaries allegedly failed to switch two funds—"DWS RREEF Real State Securities Instl" and "Fidelity Low-Priced Stock K"— with their identical, cheaper counterparts. (*Id.* at PageID.1739.)

31

Plaintiffs provide data from 2021 and 2020 showing that there were lower cost share classes available for those two funds.

Defendants argue that Plaintiffs' claim based on the "Fidelity Low-Priced Stock" fund fails because the lower-priced version "did not even exist until May 2017" and, as such, there was no or limited performance history for this fund. (ECF No. 74, PageID.2165–2166.) In support of this factual allegation, Defendants provide a hyperlink to the Fidelity website. (*Id.* at PageID.2166 n.24.)

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997)). However, "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Id.* (citing *Weiner*, 108 F.3d at 89).

The Court declines to consider Defendants' hyperlink to the Fidelity website at this stage of the case. Defendants did not provide this

information as an attachment to its motion to dismiss. *See id.* (specifying that "a defendant may attach [referenced documents or public records] to its motion to dismiss"); *see also* Eastern District of Michigan Electronic Filing Policies and Procedures R19(a) ("An exhibit available in original electronic format must be converted to PDF, made text-searchable and filed electronically.").

Even assuming this information was properly presented, the Court is not convinced that it could consider Fidelity's website without converting the motion to dismiss to a motion for summary judgment. Defendants do not provide any justification for the Court to consider Fidelity's website.[13] Plaintiffs do not quote or reference this website in the SAC. (*See, e.g.*, ECF No. 70, PageID.1739.) Further, Defendants do not explain how Fidelity's website is a "public record" such that it could be considered. Out of an abundance of caution, the Court declines to consider Fidelity's website at this time.

To the extent Defendants argue that Plaintiffs' allegations are insufficient to support an inference that the DRiV fiduciaries failed to

---

[13] In contrast, Defendants provide justification for the Court to consider Form 5500s that Defendants attached as exhibits. (ECF No. 74, PageID.2152 n.12.)

properly monitor their investment options (ECF No. 74, PageID.2166), Defendants' argument is rejected. The Sixth Circuit has repeatedly held that similar allegations—that the defendants were imprudent when "reasonable effort would have unlocked" a lower cost share class that was "substantially identical" to the existing fund—were sufficient. *See Johnson*, 122 F.4th at 220–22; *Forman*, 40 F.4th at 450. As such, the Court also finds these allegations to be sufficient.

### F.     Conclusion

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' fiduciary duty of prudence claims related to the T. Rowe Price Mutual Funds, the DRiV Plan's single class investments, the DRiV Plan's Vanguard index funds, and the DRiV Plan's failure to obtain lower-cost share classes, remain in the case.

### III.   Defendants' motion to strike or dismiss 28 Defendants

Defendants claim that the inclusion of 28 Defendants in the second amended complaint violates the Court's April 22, 2025 order (ECF No. 65) granting in part Plaintiffs' motion for leave to file their SAC. (ECF No. 74, PageID.2130–2132.)

34

### A.     The Court's prior order (ECF No. 65)

On April 22, 2025, the Court granted in part and denied in part Plaintiffs' motion for leave to file a second amended complaint. (ECF No. 65.) Plaintiffs' motion for leave to amend was denied with respect to their failure to monitor claims. (*Id.* at PageID.1374–1375.) The previous order set forth,

> The proposed SAC fails to identify which Defendants breached the obligation to monitor other fiduciaries, in addition to failing to allege which fiduciaries they were obligated to monitor. . . .
>
> Plaintiffs do not allege which Defendants breached the duty to monitor and therefore do not specify against whom they assert their claims. As a result, these claims do not include "sufficient factual matter" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 677; *see also Meizbov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) ("a complaint must contain either direct or inferential allegations respecting all the material elements [of its claims] to sustain a recovery under some viable legal theory"). At best, such an allegation asserts a "mere possibility" that any given Defendant breached their duty to monitor, which is insufficient to state a claim. *See Iqbal*, 556 U.S. at 679.

(ECF No. 65, PageID.1375.)

## B.    Analysis

Defendants argue that, despite the Court's prior order, the SAC named numerous Defendants and renewed allegations related to the denied failure to monitor claims. As such, Defendants believe these Defendants and allegations should be stricken from the SAC pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 74, PageID.2130.)

The challenged Defendants are as follows:

(1) the Board of Directors for Tenneco Inc.; (2) the Board of Directors of DRiV Automotive Inc.; (3) the Board of Directors of Tenneco Automotive Operating Company; (4) the Tenneco Compensation Committee; (5) the Federal-Mogul LLC Compensation Committee; (6) the Federal-Mogul Powertrain LLC Benefits Administration Committee; (7) the Federal-Mogul LLC Benefits Administrative Committee; (8) the Tenneco Benefits Oversight Committee; (9) the Tenneco Benefit Appeals Committee; (10) the Tenneco Benefit[s] [ ][14] Committee; and (11) the named and unnamed "Doe" members of these Boards and Committees, including Roy V. Ames, Thomas C. Freyman, Denise Gray, Brian J. Kesseler, Michelle A. Kumbier, Dennis J. Letham, James S. Metcalf, Aleksandra A. Misiolek, Charles K. Stevens, III, John S. Stroup, Jane L. Wa[r]ner, Gregg M. Sherrill, SungHwan Cho, Roger B.

---

[14] At the February 25, 2026 hearing, Defendants clarified that they intended to include "Tenneco Benefits Committee" instead of listing "Tenneco Benefit Appeals Committee" twice. This is consistent with Defendants' Exhibit A, "Demonstrative of Improper Defendants" (ECF No. 74-1), which lists Tenneco Benefits Committee as an "improper defendant."

Po[rt]er, David B. Price, Jr., Ron Hundzinski, Janice Maiden, and Jerome Rouquet.

(ECF No. 74, PageID.2125 n.2.)[15]

The Court's prior order did not permit Plaintiffs to add failure to monitor claims to its complaint. For the reasons set forth below, the Court reconsiders its prior order and allows Plaintiffs' failure to monitor claims to remain in the case with regard to certain Defendants.

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (internal citations omitted); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties'

---

[15] The unchallenged Defendants are as follows: Tenneco Inc., DRiV Automotive Inc., Tenneco Automotive Operating Company Inc., Federal-Mogul Corporation, Federal-Mogul LLC, Federal-Mogul Powertrain LLC, Tenneco Benefits & Pension Investment Committee, Tenneco Administrative Committee, Tenneco Investment Committee, Thomas J. Sabatino, Jr., Kaled Awada, Mattie Masanovich, Paul D. Novas, Peter Acker, Zhenfeng (Jennifer) Lou, Evan Stall, and Alison Mathieu.

rights and liabilities."). "A District Court may exercise this power *sua sponte* . . . or it may do so on motion of the parties." *Livonia Pub. Schs. v. Selective Ins. Co. of the Se.*, 611 F. Supp. 3d 426, 434 (E.D. Mich. 2020) (citing *Leelanau Wine Cellers, Ltd. v. Black & Red, Inc.*, 118 F. App'x 929, 945–46 (6th Cir. 2004); *In re Saffady*, 524 F.3d 799, 802–03 (6th Cir. 2008)). "This 'inherent procedural power' allows district courts to 'reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.'" *Id.* (quoting *Leelanau Wine Cellars, Ltd.*, 118 F. App'x at 946). As such, the Court modifies the section of its prior opinion with respect to the failure to monitor claims and will reevaluate those claims and the relevant Defendants.

"Because a claim that certain Defendants failed to monitor the imprudent or disloyal actions of others requires a preliminary finding of breach of those duties, courts generally treat a 'failure to monitor' claim as rising or falling with a breach of duty claim." *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 690 (E.D. Mich. 2021). Thus, Plaintiffs' failure to monitor claims arising from dismissed fiduciary duty claims, *see supra* II., are also dismissed.

Failure to monitor claims arise under 29 U.S.C. § 1105(a) and are a form of co-fiduciary liability. *See Saumer v. Cliffs Natural Res. Inc.*, No. 1:15-cv-954, 2016 WL 8668509, at *8 (N.D. Ohio Apr. 1, 2016). Section 1105(a) sets forth three forms of co-fiduciary liability. Liability is established if "the fiduciary knew of her co-fiduciary's breach, and that the fiduciary either knowingly participated in or concealed that breach, 29 U.S.C. § 1105(a)(1)," or if "the fiduciary failed to make reasonable efforts to remedy the breach, 29 U.S.C. § 1105(a)(3)." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928, 949 (7th Cir. 2024); *see also Saumer*, 2016 WL 8668509, at *8. Co-fiduciary liability also arises if "the fiduciary, by failing to comply with her duties under ERISA, enabled her co-fiduciary's breach" under § 1105(a)(2). *Appvion*, 99 F.4th at 949; *Saumer*, 2019 WL 8668509, at *8.

Courts have found that claims brought under § 1105(a)(2) are sufficient when the complaint alleges that the co-fiduciary "controlled those who were fiduciaries of its Plan." *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2012 WL 5873825, at *18 (D. Minn. Nov. 20, 2012); *see also Appvion*, 99 F.4th at 949 (finding co-fiduciary liability for

39

"directors and officers" who "had the power to appoint or remove the trustees and the concomitant duty to monitor them").

> ### i. *Board of Directors of Tenneco, Tenneco Compensation Committee, Tenneco Benefits Oversight Committee, Board of Directors of DRiV Automotive, Board of Directors of Tenneco Automotive*

Regarding the Board of Directors of Tenneco, the Tenneco Compensation Committee, the Tenneco Benefits Oversight Committee, the Board of Directors of DRiV Automotive, the Board of Directors of Tenneco Automotive, and the members of those committees,[16] the Court finds that the proposed SAC's allegations are sufficient to establish that these Defendants controlled or oversaw other fiduciaries who are alleged to have breached their fiduciary duties.

The Tenneco Benefits & Pension Investment Committee, Tenneco Administrative Committee, and Tenneco Investment Committee were, at various times, the fiduciaries responsible for administering and/or managing the assets of the Plans. (*See* ECF No. 55-2, PageID.767, 769.)

---

[16] Defendants challenged the inclusion of the following individual board members: Brian J. Kesseler, Roy V. Armes, SungHwan Cho, Dennis J. Letham, David B. Price, Jr., Gregg M. Sherrill, John S. Stroup, Jane L. Warner, Thomas C. Freyman, Denise Gray, Michelle A. Kumbier, Charles K. Stevens, III, James S. Metcalf, Roger B. Porter, and Aleksandra A. Misiolek.

The Boards of Directors of Tenneco, DRiV Automotive, and Tenneco Automotive, the Tenneco Compensation Committee, and the Tenneco Benefits Oversight Committee "oversaw and appointed members" to those committees and monitored their performance and activities. (*Id.* at PageID.766, 768, 770.) These allegations are sufficient at this stage of the case.

> ii.  *Federal-Mogul LLC Benefits Administrative Committee, Federal-Mogul LLC Compensation Committee, Federal-Mogul LLC Benefits Administration Committee*

Despite Defendants' argument, several of the challenged Defendants are not relevant to Plaintiffs' failure to monitor claims. Specifically, Plaintiffs alleged that the Federal-Mogul LLC Benefits Administrative Committee, the Federal-Mogul LLC Compensation Committee, and the Federal-Mogul LLC Benefits Administration Committee were given direct "administrative authority" over the Tenneco Plan. (ECF No. 70, PageID.1692.)

Plaintiffs' allegations regarding these three challenged Defendants do not implicate a duty to monitor. As such, the Federal-Mogul LLC Benefits Administrative Committee, the Federal-Mogul LLC

41

Compensation Committee, the Federal-Mogul LLC Benefits Administration Committee, and its members[17] will remain in the case.

### iii. *Tenneco Benefit Appeals Committee, Tenneco Benefits Committee*

Plaintiffs' failure to monitor claims do not appear relevant to the Tenneco Benefit Appeals Committee or the Tenneco Benefits Committee. However, Plaintiffs' allegations remain wholly insufficient regarding these Defendants' fiduciary status and these Defendants must be dismissed.

The only allegation related to the Tenneco Benefit Appeals Committee is that it was created by the Tenneco Board of Directors "[s]ometime before November 3, 2021." (*Id.* at PageID.766.) There is no information on the Tenneco Benefits Appeals Committee's role or duties, nor is the Court able to make any reasonable inferences to determine its duties. As such, the Tenneco Benefits Appeals Committee is dismissed from the case.

Allegations regarding the Tenneco Benefits Committee are also insufficient. According to the proposed SAC, the DRiV Plan's Form 5500s

---

[17] Defendants challenged the inclusion of the following individual committee members: Ron Hundzinski and Janice Maiden.

filed between 2016 and 2020 listed the Tenneco Benefits Committee as "the administrator of the DRiV Plan." (*Id.* at PageID.775; *see also id.* at PageID.765.) Plaintiffs do not have any other allegations regarding the Tenneco Benefits Committees. "Courts have held that being named as a plan administrator and signing a plan's Form 5500, which is a disclosure filed with the Department of Labor, is not sufficient on its own to establish that an individual is a fiduciary under ERISA." (ECF No. 65, PageID.1369 (citing *Humphries v. Mitsubishi Chem. Am., Inc.*, No. 23-cv-06214, 2024 WL 4711296, at *11 (Nov. 7, 2024 S.D.N.Y.)).) Here, Plaintiffs have not demonstrated that the Tenneco Benefits Committee "exercised discretionary authority with respect to the management and administration of the Plans." *Humphries*, 2024 WL 4711296, at *11 (quoting *Cress v. Wilson*, No. 06-cv-02717 (JGK), 2007 WL 1686687, at *2 (S.D.N.Y. June 6, 2007)). The Tenneco Benefits Committee is dismissed from the case.[18]

---

[18] Defendants suggest that the inclusion of members of the Tenneco Benefits Committee violates the Court's prior order. (ECF No. 74-1, PageID.2176 ("Tenneco Benefits Committee and its members").) The Court is unaware of the identity of the Benefits Committee's members and is unable to dismiss them from the suit.

## C.   Conclusion

In conclusion, the Court's prior order (ECF No. 65) is modified with respect to Plaintiffs' failure to monitor claims, and the Tenneco Benefits Appeals Committee and Tenneco Benefits Committee are dismissed.

## IV.   Conclusion

For the reasons set forth above, Defendants' omnibus motion is GRANTED IN PART AND DENIED IN PART. (ECF No. 74.) Plaintiffs' fiduciary duty of prudence claims related to the T. Rowe Price Mutual Funds, the DRiV Plan's single class investments, the DRiV Plan's Vanguard index funds, and the DRiV Plan's failure to obtain lower-cost share classes, remain in the case. Plaintiffs' failure to monitor claims also remain in the case. Defendants Tenneco Benefits Appeals Committee and Tenneco Benefits Committee are DISMISSED.

Plaintiffs are ORDERED to file a third amended complaint that comports with this order within 14 days of its entry.

IT IS SO ORDERED.

Dated: March 27, 2026                         s/Judith E. Levy
Ann Arbor, Michigan                           JUDITH E. LEVY
                                              United States District Judge